# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**LK, by and through Captain MEGHAN GORMAN,
Special Victim Counsel, Petitioner
v.
Lieutenant Colonel LANNY J. ACOSTA Jr., U.S. Army, Military Judge,
Respondent
and
Sergeant First Class JESSE B. SANCHEZ,
U.S. Army, Real Party in Interest**

ARMY MISC 20170008

For Petitioner:  Captain Meghan A. Gorman, JA (on brief).

For Real Party in Interest:  Lieutenant Colonel Christopher D. Carrier, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief).

For Respondent:  Lieutenant Colonel A.G. Courie III, JA; Captain Catherine M. Parnell, JA (on brief).

24 May 2017

-------------------------------------------------------------------------
OPINION OF THE COURT AND ACTION
ON PETITION FOR EXTRAORDINARY RELIEF IN THE
NATURE OF A WRIT OF MANDAMUS
-------------------------------------------------------------------------

HERRING, Judge:

Military Rule of Evidence [hereinafter Mil. R. Evid.] 513 gives unclear guidance to military judges evaluating whether mental health records should be:  1) produced for in camera review; 2) released to defense counsel; and 3) admitted at trial.  Counsel and military judges must focus on the fact that Mil. R. Evid. 513 is a rule of privilege, not discovery.  This petition for extraordinary relief demonstrates the confusion created by Mil. R. Evid. 513.  We grant the petition in part.  The military judge's ruling directing an in camera review of the mental health records is set aside, but the military judge may reconsider the real party in interest (RPI), the accused's motion *ab initio* in light of our decision today, and may allow the parties and petitioner to file supplemental matters in light of this opinion.

The RPI is charged with rape of a child, aggravated sexual abuse of a child, aggravated sexual contact of a child, sexual assault of a child, indecent viewing, and indecent acts with a child in violation of Articles 120, 120b, 120c, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 920, 920b, 920c, 934 (2006 & Supp. IV, 2012) [hereinafter UCMJ].  During two closed sessions, on 5 and 19 October 2016, his counsel sought the mental health records of LK, the alleged victim.  Defense counsel seeks LK's mental health records from 14 June 2014 to 20 April 2015.[1]  Defense counsel argues these records are essential for defense preparation, specifically:

> the extent of mental health treatment, what [LK] stated to the mental health treatment providers to obtain her diagnosis, and what diagnosis she has are all relevant to this case because they have a tendency to make the existence of facts that are of consequence, the truthfulness of [LK] and the extent of her injury, more or less probable.

Defense counsel asserts no privilege exists pursuant to Mil. R. Evid. 513 because of the exception under Mil. R. Evid. 513(d)(2) as the victim is the child of the accused's spouse.  The government responds the exception does not apply to the records of the child and if the exception were to apply to the records of such a child, it would thwart the purpose of the rule, which is to protect the social benefit of confidential counseling recognized by *Jaffee v. Redmond*, 518 U.S. 1 (1996).

## PROCEDURAL HISTORY

On 27 October 2016, the military judge ordered the government to produce LK's mental health records from 14 June 2014 to 20 April 2015 for an in camera review using the following reasoning:  "[Mil. R. Evid.] 513(d)(2), does not differentiate between statements of the child victim or statements of a parent of the child.  Accordingly, this exception applies."  Petitioner's special victim's counsel then filed a motion to reconsider this ruling, which the military judge denied in a five-page ruling on 22 December 2016.

On 5 January 2017, petitioner filed a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus and Application for Stay of Proceedings.  We granted petitioner's application for stay of proceedings pending this court's decision on the merits of the petition for extraordinary relief.  *LK v. Acosta*, ARMY MISC 20170008 (Army Ct. Crim. App. 19 Jan. 2017) (order).

---

[1] U.S. Army Criminal Investigation Division (CID) interviewed a friend of LK on 20 April 2015.  In that interview, LK's friend mentioned LK's therapy.

## LAW AND DISCUSSION

Following the Supreme Court's decision in *Jaffee v. Redmond*, the President adopted a psychotherapist-patient privilege for the military justice system with the implementation of Mil. R. Evid. 513. *United States v. Clark*, 62 M.J. 195, 199 (C.A.A.F. 2005). The rule is "'based on the social benefit of confidential counseling recognized by *Jaffee v. Redmond*, and similar to the clergy-penitent privilege.'" *Id.* (quoting Mil. R. Evid. 513 analysis at A22-45). The general rule, which first appeared in the 2000 edition of the *Manual for Courts-Martial*, *United States* [hereinafter *MCM*], is:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a).

"The privilege may be claimed by the patient or the guardian or conservator of the patient" and "[t]he psychotherapist or assistant to the psychotherapist who received the communication may claim the privilege on behalf of the patient." Mil. R. Evid. 513(c).

In general, application of the rule has been problematic in Army courts-martial. Partly, as we shall see, this is because of how the rule is written. Undoubtedly, part of the problem is also that practitioners have continued to view access to privileged mental health records through the lens of discovery. *See*, *e.g.*, *DB v. Lippert*, ARMY MISC 20150769, 2016 CCA LEXIS 63 (Army Ct. Crim. App. 1 Feb. 2016) (mem. op.). However, in tracing back the history of why this is so, we end up at our own doorstep. This court initially accorded privileged mental health records the same standards for disclosure as any other matter; which is to say, we treated privileged mental health records as having no privilege at all.

In *United States v. Cano*, we addressed the propriety of a military judge's order to disclose privileged mental health records of an eleven-year-old sexual assault victim. ARMY 20010086, 2004 CCA LEXIS 331 (Army Ct. Crim. App. 4 Feb. 2004). We described the military judge's order to produce "everything . . . even remotely potentially helpful to the defense" from the records as a "fair trial standard." *Id.* at *9. Despite such a generous standard, we ruled that the judge erred by producing too few of the counseling records. We urged military judges to review such privileged materials "with an eye and mind-set of a defense counsel at

the beginning of case preparation" in order to determine which portions to produce. *Id*. Whatever adjective suits communication protected by such a low production standard, it is not "privileged." Our fault was to look at the issue as one of discovery, governed by Article 46, UCMJ and Rule for Courts-Martial [hereinafter R.C.M.] 701, not as a request to access privileged mental health records.[2]

Perhaps because of the military's traditional broad discovery rules, perhaps because mental health records were once included in that broad discovery, adjustment to the relatively new rule on psychotherapist privilege has been slow. The disclosure of privileged matter is an entirely separate question, governed by separate rules, from whether the information would be otherwise discoverable under R.C.M. 701 and Article 46, UCMJ.

When matter is declared to be privileged, it means relevant and otherwise admissible evidence will often be excluded from the proceedings. More candidly, when certain matter is declared privileged, it means the accuracy of the proceeding will, at least occasionally, suffer in order to maintain the privilege.

A. *The "Constitutional" Exception to Military Rule of Evidence 513*

As a threshold issue, we briefly address whether there is a constitutional exception to the psychotherapist-patient privilege. Until recently, there were eight listed exceptions to Mil. R. Evid. 513. The eighth exception provided that there is no privilege when the "admission or disclosure of a communication is constitutionally required." Mil. R. Evid. 513.

The constitutional exception was removed by the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act (NDAA) for Fiscal Year 2015, Pub. L. No. 113-291, 128 Stat. 3292, 3369 (2014) [hereinafter 2015 NDAA]. The effect of the removal, if there be any, has been subject to some debate.

It is axiomatic that the removal of a constitutional exception from an executive order-based rule of evidence cannot alter the reach of the Constitution. "The military, like the Federal and state systems, has hierarchical sources of rights. These sources are the Constitution of the United States; Federal Statutes, including

---

[2] This was not the only flaw in our reasoning. We also labeled the privileged mental health records that were not in the actual or constructive possession of the prosecution as evidence under *Brady v. Maryland*, 373 U.S. 85 (1963). *Cano*, 2004 CCA LEXIS 331, at *7 n.3. Further, we described the non-disclosed records as "material" notwithstanding that we later found them to be inconsequential that "would have allowed some minor impeachment." *Id*. at *9, 11. That is, we found the military judge erred in not disclosing the records while *simultaneously* finding they were of little consequence.

the Uniform Code of Military Justice; Executive Orders containing the Military Rules of Evidence; Department of Defense Directives; service directives; and Federal common law." *United States v. Lopez*, 35 M.J. 35, 39 (C.M.A. 1992).

If the Constitution demands the "admission or disclosure" of otherwise privileged communications, the deletion of Mil. R. Evid. 513(d)(8) does not limit the Constitution's reach into the rule. Put differently, the Constitution is no more or less applicable to a rule of evidence because it happens to be specifically mentioned in the Military Rules of Evidence. *See*, *e.g.*, Mil. R. Evid. 412(b)(1)(c) (constitutional exception to rape shield).[3]

Accordingly, the reach of the constitutional exception is the same today as it was prior to the deletion of the constitutional exception pursuant to NDAA 2015. Under our constitutional hierarchy, a federal statute cannot bar the "admission or disclosure" of a communication that is "constitutionally required." Thus, we must decide if in this case the Constitution requires the "disclosure" of otherwise privileged matter under Mil. R. Evid. 513.

We begin by noting there are substantially different constitutional issues at play when addressing "disclosure" of privileged information as compared to the "admission" of privileged information. The former involves pretrial rights and the latter involves trial rights. The right to disclosure involves the right to possess information that one currently does not possess. Whereas, "admission" involves the right to introduce into a criminal trial information one already possesses.

Consider the most likely constitutional right at play: the right to confront witnesses through the crucible of cross-examination. The constitutional "right to confrontation is a trial right." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987). While statutory and regulatory rights may be at play, there is no *constitutional* right to confront witnesses at preliminary hearings or during sentencing proceedings. *Id.* *United States v. McDonald*, 55 M.J. 173, 177 (C.A.A.F. 2001) ("[I]t is only logical

---

[3] A commentator has speculated that the constitutional exception was removed because it was confusing to military judges, not because it was intended as a substantive change in the law. Major Cormac M. Smith, *Applying the New Military Rule of Evidence 513: How Adopting Wisconsin's Interpretation of the Psychotherapist Privilege Protects Victims and Improves Military Justice*, Army Law., Nov. 2015, at 10 (prior to its amendment, Mil. R. Evid. 513 "essentially compelled a prudent military judge wishing to protect the record to at least review the privileged communication in camera once a party requested production."). We have previously noted that prior to the NDAA 2015, review under the constitutional exception was "routine" but without specifying what constitutional issue was at play. *DB v. Lippert*, 2016 CCA LEXIS 63, at *14-16, 25.

to conclude that the Sixth Amendment right of confrontation does not apply to the presentencing portion of a non-capital court-martial.").

The right to confront witnesses does not include the right to *discover* information to use in confrontation. *Ritchie*, 480 U.S. at 52 ("If we were to accept this broad interpretation . . . the effect would be to transform the Confrontation Clause into a constitutionally-compelled rule of pretrial discovery. Nothing in the case law supports such a view.").

The United States Supreme Court's case of *Davis v. Alaska*, for example, involved the right to cross-examine a trial witness with protected information. 415 U.S. 308 (1974). In that case, the trial judge issued a ruling preventing the cross-examination of a key government witness about his juvenile criminal record because local law stated such files were inadmissible. Specifically, the defense was prevented from eliciting from the witness that he was on probation at the time he identified the defendant. The Supreme Court found that the cross-examination of the witness in *Davis* had been impermissibly limited. The case did not address the defendant's right to *discover* such information in the first instance; although, as we will see, such disclosure may be required if it falls under *Brady*.

This writ petition involves the requested "disclosure" of privileged information, not the admission. Accordingly, we focus on when, if ever, the Constitution requires the disclosure of privileged information.

There "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rather, constitutional "discovery" is usually delineated by the contours of the seminal case of *Brady*.

We recently summarized what constitutes "*Brady* evidence" in *United States v. Shorts*, 76 M.J. 523, 531-32 (Army Ct. Crim. App. 2017) *pet. denied*, 2017 CAAF LEXIS 337 (1 May 2017). *Brady* evidence is limited to matter (1) that is exculpatory or impeachment evidence; (2) that is "material;" and (3) that is in the actual or constructive possession of the prosecution. *Id. See also United States v. Stellato*, 74 M.J. 473 (C.A.A.F. 2015). Information is in the actual or constructive possession of the prosecution when it is in the prosecutor's own file and the files of related criminal and administrative agencies. *Shorts*, 76 M.J. at 532-33.

Mental health records located in military or civilian healthcare facilities *that have not been made part of the investigation* are not "in the possession of prosecution" and therefore cannot be "*Brady* evidence." *Brady* provides a relatively even playing-field by providing defense access to material information in the possession of the prosecutor. The privilege governing mental health records, by contrast, applies to both the prosecution and the defense. While "[a] prosecutor may have a duty to search files maintained by other 'governmental agencies closely

aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence'" this duty does not extend to medical records that have not been made part of the investigation. *United States v. Padilla*, No. CR 09-3598 JB, 2011 U.S. Dist. LEXIS 31091, at *7 (D.N.M. 14 Mar. 2011) (quoting *United States v. Brooks*, 296 U.S. App. D.C. 219, 966 F.2d 1500, 1503 (1992)). Interpreting *Brady*, the United States Supreme Court held an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case . . . .*" *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added).

As the mental health records in question here were not in the possession of the prosecution, they do not fall under the ambit of *Brady*. As we see no other constitutional right to disclosure at play, the disclosure of the mental health records in this case is not "constitutionally required."

*B. Exception (d)(2) (Child Abuse)*

We next address the issue of whether Mil. R. Evid. 513(d)(2) allows an exception to the psychotherapist-patient privilege in this case. We begin, as we must, with the plain language of the rule. The second exception to the privilege listed in section (d) of Mil. R. Evid. 513 reads as follows: "(2) when the communication is evidence of child abuse or of neglect, or in a proceeding in which one spouse is charged with a crime against a child of either spouse."[4] Mil. R. Evid. 513(d), *MCM*, 2016.

In *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007), our superior court restated how a military court interprets rules of evidence:

> We use well-established principles of statutory construction to construe provisions in the Manual for Courts-Martial. *United States v. McNutt*, 62 M.J. 16, 20 n.27 (C.A.A.F. 2005); *United States v. Lucas*, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951). Statutory construction begins with a look at the plain language of a rule. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-42 [] (1989). The plain language will control, unless use of the plain language would lead to an absurd result. *United*

---

[4] The version of this exception from the 2000 *MCM* until the President signed Exec. Order No. 13,643, 78 Fed. Reg. 29,559 (15 May 2013) was: "when the communication is evidence of spouse abuse, child abuse, or neglect or in a proceeding in which one spouse is charged with a crime against the person of the other spouse or a child of either spouse." Mil. R. Evid. 513(d)(2), *MCMs*, 2000-2008.

> *States v. Martinelli*, 62 M.J. 52, 81 n.24 (C.A.A.F. 2005)
> (Crawford, J., dissenting) ("'When the statute's language
> is plain, the sole function of the courts--at least where the
> disposition required by the text is not absurd--is to enforce
> it according to its terms.'" (quoting *Hartford Underwriters
> Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 []
> (2000))); *see also Lamie v. United States Trustee*, 540
> U.S. 526, 534 [] (2004) (bankruptcy statute, although
> grammatically awkward, is not ambiguous and should be
> enforced according to its plain meaning, as long as that
> result is not absurd).

As written, the exception has two clauses separated by a comma and a disjunctive "or." The first clause applies in cases where the communication "is evidence" of child abuse or neglect. The second clause applies based on the type of proceeding. Given the punctuation in the rule, we read the two clauses as being two independent exceptions. The former exception addresses the content of the communication; that is the communication is evidence of child abuse. The latter clause refers to the relationship of the parties "in a proceeding." We take each in turn.

### 1. *"Evidence of Child Abuse"*

The first clause is limited to communications that *are* evidence of child abuse or neglect. That is, statements that are evidence that child abuse or neglect actually occurred. The privilege does not apply to statements that are silent as to whether there was child abuse or that would be evidence that no child abuse occurred.

Additionally, but relatedly, our interpretation of the rule is in line with the drafter's intent. The analysis of Mil. R. Evid. 513 explains, "[t]he exceptions to the rule have been developed to address the specialized society of the military and separate concerns that must be met to ensure military readiness and national security." Mil. R. Evid. 513 analysis at A22-51 (citing *Parker v. Levy*, 417 U.S. 733, 743 (1974); *U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955); *Dep't. of the Navy v. Egan*, 484 U.S. 518, 530 (1988)). The analysis continues, "[t]hese exceptions are intended to emphasize that commanders are to have access to all information that is necessary for the safety and security of military personnel, operations, installations, and equipment. Therefore, psychotherapists are to provide such information despite a claim of privilege." Mil. R. Evid. 513 analysis at A22-51.

The plain language of the rule is consistent with the drafter's intent that the exceptions to the privilege were included to reflect "the needs of commanders for

knowledge of certain types of information affecting the military."[5]  That is, the exception allows military mental healthcare providers to communicate to military commanders evidence of child abuse.  The exception did not allow mental healthcare providers to reveal privileged communications that would establish the *absence* of abuse.

As the RPI seeks access to the mental health records for evidence that there was no child abuse, by the plain language of the rule the first clause is inapplicable.

### 2.  *"Proceedings Involving Spouses and Their Children"*

While we are still guided by the plain language of the second clause, it is admittedly less clear.  "There is no privilege under this rule . . . in a proceeding in which one spouse is charged with a crime against a child of either spouse."  Mil. R. Evid. 513(d)(2).

As best we can tell, interpreting this clause is an issue of first impression.  In *DB v. Lippert*, the defense had also argued that the child abuse exception provided broad access to mental health records.  However, the military judge in that case rejected the defense's arguments and the framing of writ-petition did not provide us the opportunity to address the issue.  *DB v. Lippert*, 2016 CCA LEXIS 63 at *17 n.10.

The RPI argues we should read the language of the rule broadly.  Under the RPI's reading of the rule, no witness would have a psychotherapist-patient privilege in any case where the accused is charged with a crime against his child (or his spouse's child).  Under this reading, it would not matter whose mental health records were at issue (e.g., the accused's, the spouse's, the child's, or some fourth person).  Nor would the proceeding need to involve allegations of child abuse or neglect (e.g., the allegation could be larceny).

We find this reading of the rule to be "absurd" under *United States v. Lewis*, 65 M.J. 85 (C.A.A.F. 2007).  *See also Ritchie*, 480 U.S. at 60-61.[6]  Therefore, if the

---

[5] At the time Mil. R. Evid. 513 was drafted, the rules of evidence were often written to have general applicability over military affairs.  *See* Mil. R. Evid. Analysis General Provisions at A22-1.

[6] "It therefore is essential that the child have a state-designated person to whom he may turn, and to do so with the assurance of confidentiality.  Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected.  Recognizing this, the Commonwealth--like all

(continued . . .)

plain language of the rule directed us to this result (which it does not) we would not be obligated to follow it. *Id*. One more point bears discussion.

Under the RPI's reading of the rule, all mental health records would be unprivileged in any case in which the accused is charged with an offense against his or his spouse's child, but *only if* the accused is married. The exception contained in the second clause only applies in a proceeding in which one *spouse* is charged with a crime against a child of either *spouse*. In the case of an unmarried accused—where there is no "spouse"—the exception would never apply. We can summon no rational reason, and the RPI also presents none, why a married accused would be granted full access to a child-witness's mental health records, but the unmarried accused would be denied all access to the mental health records of their child.

In any event, we do not read the plain language of the rule as broadly as the RPI. We read this exception as applying only to the *admission* of psychotherapist-patient communications.

As an initial matter we note the second clause of the exception mirrors the structure of the exception to the privilege for one spouse to refuse to testify against another spouse or disclose confidential communications. Under Mil. R. Evid. 504(c)(2)(A) "there is no privilege . . . *in proceedings* in which one spouse is charged with a crime against the person or property of the other spouse or a child of either . . . ." (Emphasis added.).

In interpreting this rule we are required, "if possible, [that] every word and every provision [] be given effect and that no word should be ignored or needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *United States v. Sager*, 76 M.J. __, No. 16-0418, 2017 CAAF LEXIS 209, at *7 (C.A.A.F. 21 Mar. 2017) (discussing the "surplusage cannon" of statutory interpretation).

We interpret "in a proceeding" to mean *in the proceeding* in question. Military R. Evid. 1101(a) lists the proceedings applicable to the rules of evidence. That is, it is an exception to the evidentiary privilege, not an exception to the disclosure of privileged information. It is an exception that prevents the assertion of

---

(. . . continued)

other States--has made a commendable effort to assure victims and witnesses that they may speak to the [Child and Youth Services] counselors without fear of general disclosure. The Commonwealth's purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result."

the privilege at trial regarding the *admission* of evidence, it is not an exception that allows the disclosure of privileged information.

In cases of child witnesses, it is the parent or guardian who generally may assert a privilege on behalf of the child. The exception in question thus operates to prevent one spouse from asserting the psychotherapist privilege to prevent the admission of statements of child abuse against themselves or their spouse.

Other than Mil. R. Evid. 513, the rules of evidence use the phrase "in a proceeding" on two other occasions. Mil R. Evid. 410(b)(2), Mil. R. Evid. 411(b)(1). Both other uses involve an exception to a rule barring the *admission* of evidence.

Again, this interpretation is consistent with the drafter's intent. The purpose of the exceptions to Mil. R. Evid. 513 were to ensure that psychotherapist communications could be transmitted to military commanders without fear of violating the privilege contained in the rule. That is, a military psychiatrist could inform a military commander of allegations of child abuse without violating the privilege. The purpose of the exception was not to turn over every alleged child-victim's mental health records to the alleged abuser.[7]

---

[7] In 2013 the Joint Services Committee redrafted the rules of evidence "to ensure that the rules addressed the admissibility of evidence, rather than the conduct of individual actors." Mil. R. Evid. Analysis General Provisions at A22-1. When Mil. R. Evid. 513 was first drafted in 2000, the rules of evidence were written in a manner so as to apply to military life in general, not just the admissibility of evidence at a court-martial. *Compare, e.g.*, Mil. R. Evid. 313, *MCM*, 2000, *with* Mil. R. Evid. 313, *MCM*, 2013. Additionally, the rule has been repeatedly revised, sometimes by statute. Without suggesting a re-visitation of any policy decisions behind the rule, we suggest that the rule should be made *much clearer*.

Consider that recent additions to the rule set out specific findings that a military judge must make before conducting an in camera review. Mil. R. Evid. 513(e)(2). However, a military judge is not required to conduct an in camera review at all, and may order the disclosure of the records in question without an in camera review. *Id.* "The military judge *may* examine the evidence . . . in camera . . . *if necessary to rule* on the production . . . of the protected records. *Id.* (emphasis added). Thus, there is the odd result that a patient has several procedural safeguards that operate to prevent an in camera review that are not (strictly speaking) applicable to a disclosure without a review.

Also, consider that prior to ordering an in camera review, a military judge "must

(continued . . .)

### 3. *The Defense Motion*

In their motion to pierce the Mil. R. Evid. 513 privilege, the defense counsel argued that these mental health records are essential for defense preparation, specifically "the extent of mental health treatment, what [LK] stated to the mental health treatment providers to obtain her diagnosis, and what diagnosis she has are all relevant to this case because they have a tendency to make the existence of facts that are of consequence, the truthfulness of [LK] and the extent of her injury, more or less probable."

In reviewing the rules applicable to a defendant's access to mental health records in several jurisdictions, one academic summarized the law as follows:

> On one point there appears to be a unanimous consensus. In sexual-assault and child abuse cases, there is general agreement that a defendant must do more than speculate that, because the complainant has participated in counseling or therapy after the alleged assault, the records in question might contain statements about the incident or

---

(. . . continued)
find by a preponderance of the evidence that the moving party showed . . . a reasonably likelihood that the records . . . would yield" admissible evidence. When is there a preponderance of the evidence that there is a reasonable likelihood? This standard of review within a standard of review is confusing.

Notably, prior to conducting an in camera review the military judge is required to determine that the requested records fall within an exception to the privilege; that is that "there is no privilege."

Finally, under the rule, prior to ordering an in camera review the military judge must separately find a reasonable likelihood that the review would yield evidence admissible under an exception to the privilege *and* that the evidence meets one of the exceptions to the privilege. One finding would appear to always swallow the other.

Confusion in the rule may stem from the fact that, like all privileges, it addresses both the privilege to prevent disclosure and the privilege to prevent admission. Thus the rule addresses cases in which the party *wants* information that may be privileged under the rule as well as cases where the party already has the information and desires to *use* it in court. While the rule addresses both, military cases seem to focus on issues of disclosure, not admission.

> incidents that are inconsistent with the complainant's
> testimony at trial.
> Because this assertion can be plausibly made in every
> sexual-assault or child molestation case, if this was
> enough to trigger an in camera review, a court would be
> required to conduct the review in virtually every such
> case.

Clifford S. Fishman, *Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records*, 86 OR. L. REV 1, 41–45 (2007). Our rules require a motion seeking the production, disclosure, or admission of mental health records "specifically describ[e] the evidence." Mil. R. Evid. 513(e)(1)(A). If a motion fails to meet the requirements of Mil. R. Evid. 513(e)(1), an in camera review is not "necessary to rule" on the motion. Mil. R. Evid. 513(e)(3).

The moving party's factual and legal theory to breach the privilege must be stated in the motion. Accordingly, we limit our analysis here to the motion filed by the RPI, and do not consider alternative theories and arguments made during the closed Article 39(a), UCMJ sessions. The structure of Mil. R. Evid. 513(e)(1-3) is designed to provide the opposing party *and the patient* with notice through the filing of a motion. As we stated in *DB v. Lippert*:

> The contents of a motion under Mil. R. Evid. 513 are
> critical. First, the military judge must "narrowly tailor" any
> ruling directing the production or release of records to the
> purposes stated in the motion. Mil. R. Evid. 513(e)(4).
> Second, Mil. R. Evid. 513 is not merely a rule that describes
> how certain types of evidence may be produced; it is also
> the means by which a patient is provided due process prior
> to the production or disclosure of privileged
> communications. Mil. R. Evid. 513(e)(1). Broadly, the rule
> provides for notice and an opportunity to be heard (i.e. due
> process). More specifically, timely notice is provided by
> the requirement that absent good cause, such a motion must
> be filed prior to the entry of pleas. Mil. R. Evid.
> 513(e)(1)(A). Substantive notice is provided by the
> requirement that the motion must "specifically describ[e]
> the evidence and stat[e] the purpose for which it is sought .
> . . ." *Id*. Unless impractical, the patient must be notified of
> the hearing and given an opportunity to be heard. Mil. R.
> Evid. 513(e)(2). . . . [T]hese procedural due process rights
> can be frustrated when, to the surprise of . . . the patient, a
> completely novel factual and legal theory is introduced at
> the hearing in support of breaching the privilege.

13

SANCHEZ–ARMY MISC 20170008

2016 CCA LEXIS 63, at *17-19.

## CONCLUSION

The petition is GRANTED in part. The military judge's ruling directing an in camera review of the mental health records is set aside. Given the limited record available to us in this writ-petition, we DENY the requested relief contained in the remainder of the petition. The military judge may reconsider the RPI's motion *ab initio* in light of our decision today, and may allow the parties and petitioner to file supplemental matters in light of this opinion.

Our order dated 19 January 2017 granting a stay of the proceedings is VACATED.

Senior Judge CAMPANELLA and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

14