# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant RENE D. ALFARO**
**United States Army, Appellant**

ARMY 20220282

Headquarters, Eighth Army
Christopher E. Martin, Military Judge
Colonel Rebecca K. Connally, Staff Judge Advocate

For Appellant: Captain Matthew S. Fields, JA; Robert A. Feldmeier, Esquire (on brief); Major Matthew S. Fields, JA; Robert A. Feldmeier, Esquire (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Colonel Jacqueline J. DeGaine, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

30 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MORRIS, Senior Judge:

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation and three specifications of sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920 [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for twenty-four months, and reduction to the grade of E-3.

Appellant raises six assignments of error; two assignments of error in his original brief, two additional assignments of error in a supplemental brief filed under seal, and two supplemental assignments of error alleging appellate post-trial processing delay and requesting further review in light of the Court of Appeals for the Armed Force's [CAAF] decision in *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024). Appellant's assignments of error concerning the Military Rule of

Evidence [Mil. R. Evid.] 513 issue, *Mendoza*, and appellate post-trial processing delay warrant discussion, but no relief.[1]

## BACKGROUND

At the time of the incident, appellant was a noncommissioned officer stationed at Camp Humphreys, Republic of Korea. The victim was appellant's direct subordinate who had arrived in Korea approximately two weeks prior to the sexual assault for which appellant was charged and convicted. On the night of assault, the victim arrived at appellant's barracks room with another male soldier to conduct her initial counseling. Because she was also celebrating her twenty-first birthday, she brought a bottle of vodka with her, which she had already begun to consume. The other male soldier and appellant each drank a small amount of the alcohol. After drinking a large amount of the bottle, the victim, who was suffering the effects of intoxication, started behaving strangely and dancing seductively. She then climbed into appellant's bed and fell asleep. Shortly thereafter she woke up and vomited on appellant's floor and fell back to sleep. The next time she woke up, she slid out of appellant's bed and through her vomit on the floor. Appellant helped her into the shower and left her there. The victim fell multiple times while in the shower. Appellant checked on the victim and sent the other soldier to the victim's room to get her a change of clothes. After returning with the victim's clothes, the soldier continued to help clean up the victim's vomit. Sometime later, the victim came out of the bathroom wearing a towel and climbed into appellant's recliner, before transitioning back into appellant's bed to sleep. With the victim asleep, appellant and the other soldier continued to talk about the military before the other soldier retired to his own barracks room across the hall. Before the soldier left, appellant told him he planned to sleep in his chair and would take care of the victim.

Approximately twenty minutes after he left, the other soldier heard appellant's door open and shut and assumed the victim was returning to her barracks room. While it is not clear if that was in fact the victim leaving or not, the victim testified that during the time she remained in the room, she was awakened by painful penetrations of her vagina three separate times. The first penetration of her vagina was with an unknown object, to which she responded by trying to move away, prompting appellant to tell her to take another shower. She complied and returned to his bed and was awakened by appellant penetrating her vagina for a second time, this time, with his finger. The victim tried to leave again but, due to her intoxicated state, was unable to locate her clothes and remove herself from the bed. After she awoke a third time by a vaginal penetration with appellant's finger, the victim located her clothes and left the room. At trial, when pressed by trial defense counsel

---

[1] We have given full and fair consideration to the remaining matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

about her memory of the sexual assault, the victim testified that at all times she was aware of and remembered the sexual assaults in appellant's barracks room.

After leaving appellant's room, the victim immediately called her boyfriend, another soldier who was stationed in the United States. Her boyfriend was initially angry with her because he believed she put herself in "a bad situation." The victim then told her cousin, who after listening to what occurred, told her she was a victim. The next morning, the victim went to breakfast with appellant and the soldier from the night before. Also, later this same day, appellant sent a text message to the victim stating, "Hey, wanted to apologize to you 'bout last night and being so touchy with you." He followed up with, "Besides that, great conversation, though, lol." About a month later, while the victim was spending time drinking alcohol with appellant and the same male soldier, the victim testified that appellant swiped his hand over her vaginal area, prompting her to file a restricted sexual assault report. Over the course of the next ten months, the victim continued to communicate personally and professionally with appellant in an attempt to cope with and normalize the incident. Ultimately, she decided to switch her report to unrestricted. The government subsequently charged appellant with sexual assault and violating the Army's regulation prohibiting undue familiarity between noncommissioned officers and junior enlisted soldiers, including the victim.

Prior to trial, defense filed a motion to compel discovery of the victim's behavioral health appointment history, prescriptions, and mental health diagnosis to assist with defense preparation. In their motion, defense counsel asserted the requested discovery was not privileged and did not fall under the protections of Mil. R. Evid. 513. Both the government and the victim's Special Victims' Counsel (SVC) filed responses requesting the military judge deny the defense request, arguing the request was overly broad and did not identify how the information was relevant to the defense preparation. The SVC's response also explicitly stated the victim was invoking her psychotherapist-patient privilege.[2] In a written ruling after a closed hearing on the issue, the military judge concluded that mental health appointment records, diagnoses, and prescriptions were not privileged under Mil. R. Evid. 513 and ordered the government to provide the following for in camera review: (1) any records of AV1's mental health diagnoses from the time of her entry on active duty through July 2020 and (2) any records of antidepressant medications prescribed to AV1 in the year before the sexual assault. The military judge denied defense counsel's request for the victim's appointment history finding that the defense had not met its burden to demonstrate that any such records were relevant to defense preparation.

During his initial in camera review, the military judge discovered the medical facility had failed to comply with his order and had provided the victim's entire

---

[2] At all times, the victim maintained her privilege to her records.

medical and mental health records. He ceased his review and returned the records to the medical facility, requesting the facility comply with his order and return only the requested items. After the medical facility asserted they were not qualified to comply, the military judge provided the victim the option of either trying once again to obtain compliance from the medical facility or allowing the military judge to screen the records in camera to redact all but the non-privileged diagnoses and prescriptions. The victim elected to allow the military judge to review and redact the records in camera. Once complete, the military judge provided both the redacted and unredacted records to the victim and her SVC, who both agreed the redacted records could be provided to defense counsel. The military judge subsequently marked and sealed as appellate exhibits both the redacted and unredacted versions of the victim's mental health records.

After trial, the case was docketed at this court on 8 February 2023. On 10 July 2023, civilian appellate defense counsel (CADC) submitted a motion to examine all appellate exhibits referenced in the military judge's sealing order. The CADC's motion incorrectly alleged that *all* the requested material was reviewed by prosecution and defense counsel at trial. However, neither the trial counsel nor the defense counsel had seen the victim's unredacted mental health and medical records. Only the military judge had reviewed those records, which were marked as Appellate Exhibit (AE) LXII, and listed as "item x" in the military judge's sealing order. However, the CADC requested to examine all sealed exhibits, including "item x" as well as "item y," which does not actually exist in the record.[3] The CADC further incorrectly asserted that all the requested sealed materials related to Mil. R. Evid. 412. This court granted the motion for fifteen of the twenty-five sealed exhibits[4] that were related to the Mil. R. Evid. 412 litigation at trial and denied the CADC access to the remaining sealed exhibits. According to the sealing order, the denied exhibits concerned trial litigation pursuant to a Mil. R. Evid. 513 motion and the victim's redacted and privileged unredacted mental health records.[5] After this court

---

[3] The military judge's sealing order, dated 20 November 2022, lists twenty-five items "a" through "y." Pursuant to this document, item y, is purported to be "AV Mental Health and Medical Records (1CD)." Based on the fact that this item was not assigned an appellate exhibit number and it is almost identical to item x, which was listed as "AE LXII, AV Mental Health and Medical Records (Unredacted) (1CD)," it appears the addition of item y was a scrivener's error.

[4] In light of the phantom "item y" in the military judge's sealing order, there were actually only twenty-four sealed exhibits.

[5] Seven of the ten exhibits pertaining to the Mil. R. Evid. 513 litigation the CADC requested were either written motions from the defense or prosecution or rulings

(continued . . . )

denied the CADC's motion for reconsideration; where for the first time he acknowledged the exhibits he was requesting related to trial litigation pursuant to Mil. R. Evid. 513, including the victim's unredacted mental health and medical records; the CADC filed a writ of mandamus with CAAF on behalf of appellant. In this petition, the CADC argued that in order to view the items to which trial defense counsel had access under Rule for Courts-Martial [R.C.M.] 1113(b)(3), he only needed to make a colorable showing of reasonable necessity to fulfill his duties as appellate counsel. On 13 September 2023, CAAF denied appellant's petition for extraordinary relief.

Over the course of the next three months, the CADC filed two additional petitions for extraordinary relief at CAAF on behalf of appellant, one requesting access to all sealed materials in the record and the other requesting that CAAF direct this court to permit his military appellate defense counsel to securely transmit the sealed materials to the CADC located in Israel. The CADC also filed a petition for extraordinary relief in the nature of a writ of prohibition ordering this court not to enforce Army Court of Criminal Appeals Rule (A.C.C.A.R.) 6.9, which required counsel to notify the privilege holder of any motion to examine sealed privileged matters.[6] In response to the petition for extraordinary relief, the government appellate division did not take a position on whether the CADC should be permitted to examine the sealed materials. Our superior court granted each of these petitions for extraordinary relief and the CADC was ultimately provided all the sealed materials from record, with the exception of the phantom "item y", access to which CAAF denied. Upon receipt and review of the sealed exhibits, including a limited

---

( . . . continued)

from the military judge, so there is no doubt counsel reviewed those items at trial. The remaining three exhibits included the phantom "item y" and the redacted and unredacted copies of the victim's medical and mental health records. With the victim's consent, both prosecution and defense counsel received a copy of the victim's redacted mental health records, AE LX, but neither counsel received a copy of the victim's unredacted mental health records, AE LXII, at trial. At all times, the victim maintained her privilege to her unredacted mental health records. The CADC seems to have subsequently acknowledged the fact in his motion to our court and his petition to our superior court that the counsel at trial perhaps did not receive "item y", but he failed to acknowledge that "item y" and "item x" were referring to the same appellate exhibit.

[6] Army Court of Criminal Appeals Rule 6.9(d) required any motion to examine privileged materials to include a certification that the privilege holder has been notified of the motion or that counsel has taken reasonable steps to notify the privilege holder of any motion to examine sealed privileged material. The rule also required the motion include an explanation of why the privilege had been waived, did not exist, or did not apply because of a recognized exception.

review of the victim's privileged, unredacted mental health records, the CADC discovered information that he now asserts should have either been disclosed to the parties at trial, or in the absence of disclosure, should have required the military judge to abate the trial proceedings.

We are in an unusual situation in this case, because the issue appellant asserts was discovered during the appellate process by a disclosure of the victim's sealed and privileged mental health records, in violation of Mil. R. Evid. 513. While multiple parties could have intervened, as the government points out, the disclosure of the documents was a result of the CADC's mistaken assertions in his multiple motions to this court and petitions to our higher court that all of the sealed documents he requested to examine had been provided to the parties at trial. In fact, the parties at trial had access to all but one of the requested appellate exhibits. The one appellate exhibit the parties were not provided, AE LXII, *was clearly marked* as the victim's unredacted mental health and medical records.[7] Appellant now alleges that based on his CADC's limited review of the victim's privileged mental health communications that it was an abuse of discretion for the military judge not to allow disclosure of the privileged communications or abate the trial. We disagree.

## LAW AND DISCUSSION

### A. Military Rule of Evidence 513

We review this issue under an abuse of discretion standard. *United States v. Tinsley*, 81 M.J. 836, 846 (Army Ct. Crim. App. 2021) (internal citation omitted), pet. denied, 82 M.J. 372 (C.A.A.F. 2022). "An abuse of discretion occurs when a military judge's decision is based on clearly erroneous findings of fact or incorrect conclusions of law." *United States v. Hernandez*, 81 M.J. 432, 437 (C.A.A.F. 2021) (internal citation omitted). Our superior court has already decided that diagnoses and prescriptions are not uniformly privileged under Mil. R. Evid. 513. *United States v. Mellette*, 82 M.J. 374, 375 (C.A.A.F. 2022) ("Based on the plain language of M.R.E. 513, and mindful of the Supreme Court's admonition that privileges must be strictly construed, we conclude that diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513."). It is undisputed in the record and by the parties that the military judge released a

---

[7] It is not lost on this court, that instead of contesting the requirements of A.C.C.A. R. 6.9, if the CADC had simply followed the rule, it is possible the victim, who was present at the trial and maintains an interest in protecting the privacy of her mental health records could have intervened and identified to both courts at a very early stage of the appellate review process what was ultimately never released to the parties. We further note that the government had ample opportunity to address, either to this court or our superior, that the CADC was requesting access to view sealed, privileged records that had not been reviewed by the parties at trial.

redacted version of the victim's mental health and medical records to the prosecution and defense teams at trial. Since the redacted records only included the victim's mental health diagnoses and prescribed antidepressant medications, the military judge's ruling was in compliance with *Mellette* and not an abuse of his discretion.

Appellant argues, however, that in the process of his counsel reviewing the privileged records to identify the victim's mental health diagnoses and prescriptions that the military judge would have seen information requiring disclosure to the parties or abatement of trial. *See, e.g., B.M. v. United States*, 84 M.J. 314, 322 (C.A.A.F. 2024) (Ohlson, C. J., concurring) (noting the "unenviable position" the military judge placed herself in by reviewing protected mental health records, erroneously turned over by a mental health facility, and discovering impeachment materials, the disclosure of which was necessary for the real party in interest to receive a fair trial). In coming to this conclusion, appellant makes multiple incorrect assumptions. First, he assumes that by conducting an in camera review to identify and release the prescriptions and diagnoses that the military had to read, for content, portions of the victim's mental health record that included confidential communications. This assumption is mere speculation. The technical language included in a medical diagnosis and prescription would be easily discernible from the language a victim would use in a communication of personal details about an assault. Thus, a military judge could conceivably conduct an in camera review for non-privileged diagnoses and prescription information without the more in-depth review and analysis of the entire contents, as contemplated by appellant.

Second, appellant assumes that if the military judge had indeed read the information, he would have determined, sua sponte, that admission of the contents was required. This assumption, however, is based on a misunderstanding of the law and the facts in this case. "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition" under Mil. R. Evid. 513(a). To request production or admission of patient records or communications, a party must follow the procedures outlined in Mil. R. Evid. 513(e). *E.g., Mellette*, 82 M.J. at 379. Since defense counsel never requested nor initiated the necessary process for admissibility of the patient's privileged communications under the rule, the military judge was not examining the records for this purpose. A judge is presumed to know and follow the law. *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008). In following the law, the military judge would have purposefully avoided reading confidential communications, as he was aware appellant never requested nor made a proffer for the privileged records and the victim never waived her privilege as to those confidential communications.

7

Under his mandate to review the records for non-privileged information, the military judge did not have a sua sponte duty to pursue release of the privileged information or abate the trial. He was only reviewing the documents for releasable information. He was not reviewing the documents to determine if privileged information qualified for an exception or somehow impacted appellant's constitutional rights. As such, he did not abuse his discretion.

Even in his submission to this court, appellant failed to offer any evidence that the admissibility of the records could have been appropriate under one of the enumerated exceptions to Mil. R. Evid. 513. Instead, he argues that the privilege "must not infringe upon the basic constitutional requirements of due process and confrontation," citing to *J.M. v. Payton-O'Brien*, 76 M.J. 782, 787 (N.M. Ct. Crim. App. 2017). But he never mentions this court's precedent in *Tinsley*, 81 M.J. 836.

In *Tinsley*, this court conducted a thorough analysis of the patient-psychotherapist privilege and the impact of the President's striking the constitutional exception from the rule. *Id.* Recognizing the deletion of the constitutional exception as both a legislative and executive act, "the President was likely at the apex of his authority in implementing M.R.E. 513." *Id.* at 849 (internal citation and quotations omitted). Holding that neither a confrontation clause exception nor a *Brady* exception[8] applied to Mil. R. Evid. 513, *Tinsley* ultimately concluded military courts do not have the authority to read a constitutional exception back into Mil. R. Evid. 513 "or otherwise conclude that the exception still survives notwithstanding its explicit deletion." *Id.* at 849, 851.

In addition to *Tinsley*,

> we must also heed the Supreme Court's guidance that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence," *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) (alteration in original removed) (internal quotation marks omitted) (citation omitted), and our own view that "privileges 'run contrary to a court's truth-seeking function,'" *United States v. Jasper*, 72 M.J. 276, 280 (C.A.A.F. 2013) (quoting *United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007)).

*Mellette*, 82 M.J. at 377. Consequently, we must "narrowly construe" M.R.E. 513. *Id.* at 379. The President, in his role as the promulgator of the Military Rules of

---

[8] The government is required to disclose evidence within its possession or control that is material and favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Evidence, has "the authority and the responsibility to balance a defendant's right to access information that may be relevant to his defense with a witness's right to privacy." *Id.* at 380. Further, there is no constitutional exception for the attorney-client, spousal, or clergy-penitent privileges in the military rules of evidence and there is every indication the psychotherapist-patient privilege was meant to be equal to those privileges and "rooted in the imperative need for confidence and trust." *Tinsley*, 81 M.J. at 850 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996)). Contrary to appellant's arguments otherwise, and in the absence of an applicable exception under Mil. R. Evid. 513(d), appellant had no right to access the victim's confidential communications.

Privileged records obtained inadvertently maintain their privilege. Here, the victim has not voluntarily disclosed or consented to the disclosure of the privileged matters to the CADC on appeal and this particular disclosure does not waive the privilege. As noted in *Tinsley*, when addressing the marital privilege, courts have regularly held the unauthorized disclosure of privileged information does not waive the privilege. *Id.* at 852. Similarly, this court found the inadvertent disclosure of potentially exculpatory privileged information to the government, "does not constitute a waiver or otherwise trigger an immediate *Brady* duty to disclose." *Id.* at 852. That result applies equally to the defense. "Regardless of how [a party] obtains the records, that is either intentionally or inadvertently, it is no less bound to honor evidentiary privileges than the defense. *See LK v. Acosta*, 76 M.J. 611, 616 (Army Ct. Crim. App. 2017) ("The privilege governing mental health records, by contrast, applies to both the prosecution and the defense."). We find the victim's unredacted records in AE LXII remain privileged materials. Therefore, the CADC should return or confirm the deletion of the victim's improperly disclosed privileged mental health records.

### B. United States v. Mendoza

We next briefly address appellant's supplemental assignment of error that appellant's convictions of sexual assault are not legally and factually sufficient after *Mendoza* because the government failed to prove the victim had the capacity to consent. Despite appellant's assertions to the contrary, appellant was not convicted under a theory of incapacity. "Nothing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent." *United States v. Casillas*, __ M.J. __, 2025 CAAF LEXIS 692, at *12 (C.A.A.F. 20 Aug. 2025) (alteration and internal quotations omitted) (citing *Mendoza*, 85 M.J. at 222). As the CAAF noted, a victim's intoxication can still be relevant under a "without consent" theory of liability, so long as evidence of intoxication is not the *only* evidence of non-consent. *Mendoza*, 85 M.J. at 222. The evidence of the victim's intoxication is undisputed in this case. Notwithstanding her intoxication, the victim testified that she felt and remembered every penetration. Like the victim in *Casillas*, the victim awoke to the assault in-progress for each of

the three penetrations and was capable of consenting. 2025 CAAF LEXIS 692, at *11. In this victim's case, despite her intoxication, she manifested a lack of consent by physically moving her body as far away from appellant as she could, declining his invitation to take a shower with him and ultimately locating her clothes, leaving the room and immediately telling her boyfriend and another family member about the incident. This evidence established that she was both capable of consenting and did communicate her non-consent to the charged sexual acts. Based on our review of the record, we conclude that appellant's conviction is legally and factually sufficient under both *Mendoza* and *Casillas*.

## C. Post-Trial Delay

### 1. Additional Facts

Appellant's case was docketed with this court on 8 February 2023. Appellate review was initially marred by litigation, with multiple writs submitted to our superior court regarding sealed materials from the court-martial as discussed above. Ultimately, appellant received access to these records, including the unredacted mental health records of the victim, which had not been reviewed by counsel at trial. These delays, coupled with nine additional requests for time from appellate defense counsel, resulted in appellant's brief being submitted to this court on 4 March 2024. Approximately one month later, on 17 April 2024, appellant "notic[ed] the court" of his "demand for speedy appellate processing," before government appellate counsel submitted their brief. Appellate government counsel filed their brief on 17 June 2024, putting the case at issue. Subsequently, appellant renewed his demand for speedy appellate processing on 24 July 2025, moving to amend his brief to include delayed appellate post-trial processing as an assignment of error. The following week, appellant sought leave of court, for a second time, for the court to consider an additional, unrelated assignment of error. Appellant again asserted his request for speedy appellate processing. None of these requests, including the newly offered Assignment of Error III, included any articulation of prejudice appellant experienced due to the appellate processing of his case.

### 2. Law and Discussion

"[C]onvicted service members have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (internal citations omitted). We review allegations of unreasonable delay in post-trial processing and appellate review de novo. *Id.* (internal citations omitted). Whether the delay is reasonable or dilatory is determined on a case-by-case basis. *E.g.*, *United States v. Toohey (Toohey I)*, 60 M.J. 100, 102 (C.A.A.F. 2004); *United States v. Abdullah*, 85 M.J. 501, 2024 CCA LEXIS 479, at *28-29 (Army Ct. Crim. App. 5 Nov. 2024).

There are "two separate and independent avenues to provide relief for dilatory post-trial processing: (1) the Due Process Clause of the Fifth Amendment; and (2) the statutory basis under Article 66 when there is no showing of 'actual prejudice.'" *Abdullah*, 2024 CCA LEXIS 479, at *9 (quoting *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022)). In determining whether an appellant has been deprived of speedy post-trial and appellant review, courts presume a delay is unreasonable if this court does not reach a decision within eighteen months of a case being docketed. *Moreno*, 63 M.J. at 142. A presumptively unreasonable delay triggers an analysis of the four factors from *Barker v. Wingo*, 407 U.S. 514 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) assertion of the right to timely review and appeal; and (4) prejudice. *Id.* at 135, 142; *see also United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (internal citation omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or appellant," with "[n]o single factor [being] required for finding a due process violation . . . ." *Moreno*, 63 M.J. at 136. When there is no finding of prejudice under the fourth *Barker* factor, a due process violation still occurs when "in balancing the three other factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 87 (quoting *United States v. Toohey* (*Toohey II*), 63 M.J. 353, 362 (C.A.A.F. 2006)).

Where post-trial delay does not constitute a due process violation, this court still has statutory authority under Article 66(d)(2), UCMJ, to "provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record."

After carefully examining the basis for appellate processing delay in appellant's case, we find no relief is warranted. Appellant has not asserted any unique prejudice due to the amount of time it has taken this court to thoroughly review his record and render a decision. As such, we are only able to provide relief if the balance of the other *Barker* factors weighs so heavily in favor of appellant "that tolerating [the delay] would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 87 (internal quotation marks and citations omitted).

Though appellant asserted his request for speedy appellate processing, this alone is insufficient to warrant relief. We acknowledge over 950 days passed from when this court received appellant's record of trial to when this decision would be rendered. While this amount of time is lengthy, a nuanced parsing of the pertinent timeline is required. In this instance, appellant's appeal was with him and his counsel for briefing for almost 400 days, partially resulting in the case not being put "at issue" with this court until approximately 450 days ago. In the days since, appellant has further supplemented his assignments of error to this court, twice,

11

including raising a new, substantive assignment of error based on the rendering of a decision by our superior court. In total, given the procedural and jurisdictional ebbs and flows that appellant's case took, we find the total processing time does not constitute a due process violation. Separately, under our statutory authority, we do not find relief would be appropriate under Article 62(d)(2), UCMJ.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Senior Judge FLEMING concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court