# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**

v.

**Sergeant RENE D. ALFARO**
**United States Army, Appellant**

ARMY 20220282

Headquarters, Eighth Army
Christopher E. Martin, Military Judge
Colonel Rebecca K. Connally, Staff Judge Advocate

For Appellant: Captain Matthew S. Fields, JA; Robert A. Feldmeier, Esquire (on brief); Major Matthew S. Fields, JA; Robert A. Feldmeier, Esquire (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Colonel Jacqueline J. DeGaine, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

12 February 2026

-------------------------------------------------------------------
OPINION OF THE COURT ON RECONSIDERATION
-------------------------------------------------------------------

MORRIS, Senior Judge:

Appellant's case poses a novel dilemma. During the course of appellate review, appellant's counsel discovered what they claimed to be "constitutionally required" evidence in the victim's privileged psychotherapist records, records which were reviewed, to some degree, by the military judge during the course of pretrial litigation. Based on this discovery, appellant now alleges the military judge abused his discretion, either in failing to sua sponte disclose said information or in requiring the victim authorize the release of privileged information or else risk the abatement of proceedings. For the reasons set forth, we disagree.

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation and three specifications of sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920 [UCMJ]. The military

---

[1] Judge JUETTEN did not participate in the decision.

judge sentenced appellant to a dishonorable discharge, confinement for twenty-four months, and reduction to the grade of E-3.

Previously before this court, appellant raised six assignments of error in addition to matters submitted personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). A panel of this court found three of these assignments of error to merit discussion but not relief and affirmed the findings and sentence. *United States v. Alfaro*, ARMY 20220282, 2025 CCA LEXIS 468 (Army Ct. Crim. App. 30 Sept. 2025) (mem. op.). Appellant then requested this court reconsider his case on only one assignment of error, that the military judge erred by not disclosing privileged materials he learned during an in camera review of mental health records or alternatively abating the proceedings.

We agreed to reconsider this issue *en banc*.[2] For the reasons that follow, we again conclude that the military judge did not err and again affirm the findings and sentence.

## BACKGROUND

At the time of the incident, appellant was a noncommissioned officer stationed at Camp Humphreys, Republic of Korea. The victim was appellant's direct subordinate who had arrived in Korea approximately two weeks prior to the sexual assault for which appellant was charged and convicted. On the night of assault, the victim arrived at appellant's barracks room with another male soldier to conduct her initial counseling. Because she was also celebrating her twenty-first birthday, she brought a bottle of vodka with her. The other male soldier and appellant each drank a small amount of the alcohol. After drinking a large amount of the bottle, the victim, who was suffering the effects of intoxication, started behaving strangely and dancing seductively. She then climbed into appellant's bed and fell asleep. Shortly thereafter, she woke up and vomited on appellant's floor and fell back to sleep. The next time she woke up, she slid out of appellant's bed and through her vomit on the floor. After the other soldier picked up the victim, appellant helped her into the shower and left her there. The victim fell multiple times while in the shower. Appellant checked on the victim and sent the other soldier to the victim's room to get her a change of clothes. After returning with the victim's clothes, the soldier continued to clean up the victim's vomit. Sometime later, the victim came out of the bathroom wearing a towel and climbed into appellant's recliner, before transitioning back into appellant's bed to sleep. With the victim asleep, appellant and the other soldier continued to talk about the military before the other soldier retired to his own barracks room across the hall. Before the soldier left, appellant told him he planned to sleep on a sofa and would take care of the victim.

---

[2] Our prior decision stands on the other assignments of error, to include the matters personally submitted by the appellant.

Approximately twenty minutes after he left, the other soldier heard appellant's door shut and assumed the victim was returning to her barracks room. While it is not clear if that was in fact the victim leaving or not, the victim testified that during the time she remained in the room, she was awakened by painful penetrations of her vagina three separate times. The first penetration of her vagina was with an unknown object, to which she responded by trying to move away, prompting appellant to tell her to take another shower. She complied and returned to his bed and was awakened by appellant penetrating her vagina for a second time, this time, with his finger. The victim tried to leave again but, due to her intoxicated state, was unable to locate her clothes and remove herself from the bed. After she awoke a third time by a vaginal penetration with appellant's finger, the victim located her clothes and left the room. At trial, when pressed by trial defense counsel about her memory of the sexual assault, the victim was unable to remember ancillary details surrounding the night in question, though she testified she was aware of and remembered the sexual assaults in appellant's barracks room.

After leaving appellant's room, the victim immediately called her boyfriend, another soldier who was stationed in the United States. Her boyfriend was initially angry with her because he believed she put herself in "a bad situation." The next morning, the victim went to breakfast with appellant and the soldier from the night before. Also, later this same day, appellant sent a text message to the victim stating, "Hey…. Wanted to apologize to you bout last night and being so touchy with you." He followed up with, "Besides that, great conversation though lol." About a month later, while the victim was spending time drinking alcohol with appellant and the same male soldier, the victim testified that appellant swiped his hand over her vaginal area, prompting her to file a restricted sexual assault report. Over the course of the next ten months, the victim continued to communicate personally and professionally with appellant in an attempt to cope with and normalize the incident. Ultimately, she decided to switch her report to unrestricted. The government subsequently charged appellant with sexual assault and violating the Army's regulation prohibiting undue familiarity between appellant as a noncommissioned officer and junior enlisted soldiers, including the victim.

Prior to trial, defense filed a motion to compel discovery of the victim's behavioral health appointment history, prescriptions, and mental health diagnoses to assist with defense preparation. In their motion, defense counsel asserted the requested discovery was not privileged and did not fall under the protections of Military Rule of Evidence [Mil. R. Evid.] 513. Both the government and the victim's Special Victims' Counsel (SVC) filed responses requesting the military judge deny the defense request, arguing the request was overly broad and did not identify how the information was relevant to the defense preparation. The SVC's response also explicitly stated the victim was invoking her psychotherapist-patient privilege. In a written ruling after a closed hearing on the issue, the military judge concluded that mental health appointment records, diagnoses, and prescriptions were

not privileged under Mil. R. Evid. 513 and ordered the government to provide the following for in camera review: (1) any records of the victim's mental health diagnoses from the time of her entry on active duty through July 2020 and (2) any records of antidepressant medications prescribed to the victim in the year before the sexual assault. The military judge denied defense counsel's request for the victim's appointment history, finding that the defense had not met its burden to demonstrate that any such records were relevant to defense preparation.

During his initial in camera review, the military judge discovered the medical facility had failed to comply with his order and had provided the victim's entire medical and mental health records. He ceased his review and again requested the facility comply with his order and return only the requested items. After the medical facility asserted they were not qualified to comply, the military judge provided the victim the option of either trying once again to obtain compliance from the medical facility or allowing the military judge to screen the records in camera to redact all but the non-privileged diagnoses and prescriptions. The victim elected to allow the military judge to review and redact the records in camera. Once complete, the military judge provided both the redacted and unredacted records to the victim and her SVC, who both agreed the redacted records could be provided to defense counsel. The military judge subsequently marked and sealed as appellate exhibits both the redacted and unredacted versions of the victim's mental health records.

After trial, the case was docketed at this court on 8 February 2023. On 10 July 2023, civilian appellate defense counsel (CADC) submitted a motion to examine all appellate exhibits referenced in the military judge's sealing order. The CADC's motion incorrectly alleged that *all* the requested material was reviewed by prosecution and defense counsel at trial. However, neither the trial counsel nor the defense counsel had seen the victim's unredacted mental health and medical records. Only the military judge had reviewed those records, which were marked as Appellate Exhibit (AE) LXII, and listed as "item x" in the military judge's sealing order. However, the CADC requested to examine all sealed exhibits, including "item x" as well as "item y," which does not actually exist in the record.[3] The CADC further incorrectly asserted that all the requested sealed materials related to Mil. R. Evid. 412. This court granted the motion for fifteen of the twenty-five sealed exhibits[4]

---

[3] The military judge's sealing order, dated 20 November 2022, lists twenty-five items "a" through "y." Pursuant to this document, item y, is purported to be "AV Mental Health and Medical Records (1CD)." Based on the fact that this item was not assigned an appellate exhibit number and it is almost identical to item x, which was listed as "AE LXII, AV Mental Health and Medical Records (Unredacted) (1CD)," it appears the addition of item y was a scrivener's error.

[4] In light of the phantom "item y" in the military judge's sealing order, there were actually only twenty-four sealed exhibits.

that were related to the Mil. R. Evid. 412 litigation at trial and denied the CADC access to the remaining sealed exhibits. As listed on the sealing order, the denied exhibits concerned trial litigation pursuant to a Mil. R. Evid. 513 motion and the victim's redacted and privileged unredacted mental health records.[5]

After this court denied the CADC's motion for reconsideration—where for the first time he acknowledged the exhibits he was requesting related to trial litigation pursuant to Mil. R. Evid. 513—the CADC filed a writ of mandamus with the Court of Appeals for the Armed Forces [CAAF] on behalf of appellant. In this petition, the CADC argued that in order to view the items to which trial defense counsel had access under Rule for Courts-Martial [R.C.M.] 1113(b)(3), he only needed to "make a colorable showing of need" to fulfill his duties as appellate counsel. On 13 September 2023, CAAF denied appellant's petition for extraordinary relief.

Over the course of the next three months, the CADC filed two additional petitions for extraordinary relief at CAAF on behalf of appellant, one requesting access to all sealed materials in the record and the other requesting that CAAF direct this court to permit his military appellate defense counsel to securely transmit the sealed materials to the CADC. The CADC also filed a petition for extraordinary relief in the nature of a writ of prohibition ordering this court not to enforce Army Court of Criminal Appeals Rule (A.C.C.A.R.) 6.9, which required counsel to notify the privilege holder of any motion to examine sealed privileged matters.[6] In response to the petition for extraordinary relief, the government appellate division

---

[5] Seven of the ten exhibits pertaining to the Mil. R. Evid. 513 litigation the CADC requested were either written motions from the defense or prosecution or rulings from the military judge, so there is no doubt counsel reviewed those items at trial. The remaining three exhibits included the phantom "item y" and the redacted and unredacted copies of the victim's medical and mental health records. With the victim's consent, both prosecution and defense counsel received a copy of the victim's redacted mental health records, AE LX, but neither counsel received a copy of the victim's unredacted mental health records, AE LXII, at trial. At all times, the victim maintained her privilege to her unredacted mental health records. The CADC seems to have subsequently acknowledged the fact in his motion to our court and his petition to our superior court that the counsel at trial perhaps did not receive "item y", but he failed to acknowledge that "item y" and "item x" were referring to the same appellate exhibit.

[6] Army Court of Criminal Appeals Rule 6.9(d) required any motion to examine privileged materials to include a certification that the privilege holder had been notified of the motion or that counsel had taken reasonable steps to notify the privilege holder of any motion to examine sealed privileged material. The rule also required the motion include an explanation of why the privilege had been waived, did not exist, or did not apply because of a recognized exception.

did not take a position on whether the CADC should be permitted to examine the sealed materials. Our superior court granted each of these petitions for extraordinary relief, and the CADC was ultimately provided all the sealed materials from record, including the victim's unredacted mental health and medical records, with the exception of the phantom "item y", access to which CAAF denied. Upon receipt and review of the sealed exhibits, including a limited review of the victim's privileged, unredacted mental health records, the CADC discovered information that he now asserts should have either been disclosed to the parties at trial, or in the absence of disclosure, should have required the military judge to abate the trial proceedings.

As noted above, we are in an unusual situation in this case, because the error appellant now raises on appeal was discovered by a disclosure of the victim's sealed and privileged mental health records, in violation of Mil. R. Evid. 513, during the appellate process. While multiple parties could have intervened, as the government points out, the disclosure of the documents was a result of the CADC's mistaken assertions in his multiple motions to this court and petitions to our higher court that all of the sealed documents he requested to examine had been provided to the parties at trial. In fact, the parties at trial had access to all but one of the requested appellate exhibits. The one appellate exhibit the parties were not provided, AE LXII, *was clearly marked* as the victim's unredacted mental health and medical records.[7]

Appellant now alleges that based on his CADC's limited review of the victim's privileged mental health communications, which resulted in the CADC's discovery of what he claims are "constitutionally required" materials, it was an abuse of discretion for the military judge not to allow disclosure of the privileged communications or abate the trial. We disagree.

## LAW AND DISCUSSION

We review this issue under an abuse of discretion standard. *United States v. Tinsley*, 81 M.J. 836, 846 (Army Ct. Crim. App. 2021) (citation omitted), pet. denied, 82 M.J. 372 (C.A.A.F. 2022). "An abuse of discretion occurs when a military judge's decision is based on clearly erroneous findings of fact or incorrect

---

[7] It is not lost on this court that instead of contesting the requirements of A.C.C.A. R. 6.9, if the CADC had simply followed the rule, it is possible the victim, who was present at the trial and maintains an interest in protecting the privacy of her mental health records, could have intervened and identified to both courts at a very early stage of the appellate review process what was ultimately never released to the parties. We further note that the government had ample opportunity to address, either to this court or our superior court, that the CADC was requesting access to view sealed, privileged records that had not been reviewed by the parties at trial.

conclusions of law." *United States v. Hernandez*, 81 M.J. 432, 437 (C.A.A.F. 2021) (citation omitted). Our superior court has already decided that diagnoses and prescriptions are not uniformly privileged under Mil. R. Evid. 513. *United States v. Mellette*, 82 M.J. 374, 375 (C.A.A.F. 2022) ("Based on the plain language of M.R.E. 513, and mindful of the Supreme Court's admonition that privileges must be strictly construed, we conclude that diagnoses and treatments contained within medical records are not themselves uniformly privileged under M.R.E. 513.").

It is undisputed in the record and by the parties that the military judge released a redacted version of the victim's mental health and medical records to the prosecution and defense teams at trial. Since the redacted records only included the victim's mental health diagnoses and prescribed antidepressant medications, the military judge's ruling was in compliance with *Mellette* and not an abuse of his discretion.

Appellant argues, however, that in the process of his counsel reviewing the privileged records to identify the victim's mental health diagnoses and prescriptions that the military judge would have seen information requiring disclosure to the parties or abatement of trial. *See, e.g., B.M. v. United States*, 84 M.J. 314, 322 (C.A.A.F. 2024) (Ohlson, C. J., concurring) (noting the "unenviable position" the military judge placed herself in by reviewing protected mental health records, erroneously turned over by a mental health facility, and discovering impeachment materials, the disclosure of which was necessary for the real party in interest to receive a fair trial). In coming to this conclusion, appellant makes multiple incorrect assumptions. First, he assumes that by conducting an in camera review to identify and release the prescriptions and diagnoses that the military had to read, for content, portions of the victim's mental health record that included confidential communications. This assumption is mere speculation. The technical language included in a medical diagnosis and prescription would be easily discernible from the language a victim would use in a communication of personal details about an assault. Thus, a military judge could conceivably conduct an in camera review for non-privileged diagnoses and prescription information without the more in-depth review and analysis of the entire contents, as contemplated by appellant.

Second, appellant assumes that if the military judge had indeed read the information, he would have determined, sua sponte, that disclosure of the contents was required. This assumption, however, is based on a misunderstanding of the law and the facts in this case. Pursuant to Mil. R. Evid. 513(a):

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist . . . if such communication was made for the purpose of

facilitating diagnosis or treatment of the patient's mental
or emotional condition.

To request production or admission of patient records or communications, a party must follow the procedures outlined in Mil. R. Evid. 513(e). *See e.g.*, *Mellette*, 82 M.J. at 379 (noting Mil. R. Evid. 513(e) "authorizes a military judge to examine the proffered evidence in camera 'if such examination is necessary to rule on the production or admissibility of *protected* records or communications . . . ." (emphasis in original) (citation omitted)). Since defense counsel never requested nor initiated the necessary process for admissibility of the patient's privileged communications under the rule, the military judge was not examining the records for this purpose. A judge is presumed to know and follow the law. *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008). Because defense counsel had not followed the required procedures under Mil. R. Evid. 513(a) to request any privileged records, the military judge was not required to review the confidential communications with an eye of determining whether an exception to the privilege under Mil. R. Evid. 513(d) existed. Undoubtedly, he was aware appellant never requested nor made a proffer for the privileged records and the victim never waived her privilege as to those confidential communications.

Under his mandate to review the records for non-privileged information, the military judge did not have a sua sponte duty to pursue release of the privileged information or abate the trial. He was only reviewing the documents for non-privileged information. He was not reviewing the documents to determine if privileged information qualified for an exception or somehow impacted appellant's constitutional rights. As such, he did not abuse his discretion.

Assuming arguendo the military judge did see the information the CADC claims is present in the victim's mental health records, nothing in the Constitution requires the judge to disclose the privileged information or abate the trial if the victim does not consent to this disclosure.

Appellant failed to offer any evidence that the disclosure of the records could have been appropriate under one of the enumerated exceptions to Mil. R. Evid. 513. Even after this court identified this shortfall, appellant failed to proffer an applicable exception to Mil. R. Evid. 513. Instead, he has continued to argue that the privilege "must not infringe upon the basic constitutional requirements of due process and confrontation[,]" citing to *J.M. v. Payton-O'Brien*, 76 M.J. 782, 788 (N.M. Ct. Crim. App. 2017). But he never mentions this court's precedent in *Tinsley*, 81 M.J. 836.

In *Tinsley*, this court conducted a thorough analysis of the patient-psychotherapist privilege and the impact of the President striking the constitutional exception from the rule. *See generally id.* at 845-54. Recognizing the deletion of

8

the constitutional exception as both a legislative and executive act, "the President was likely at the apex of his authority in implementing M.R.E. 513." *Id.* at 849 (internal quotation marks omitted) (citation omitted). Holding that neither a confrontation clause exception nor a *Brady* exception[8] applied to Mil. R. Evid. 513, *Tinsley* ultimately concluded military courts do not have the authority to read a constitutional exception back into Mil. R. Evid. 513 "or otherwise conclude that the exception still survives notwithstanding its explicit deletion." *Id.* at 849, 850-51.

In addition to *Tinsley*,

> we must also account for the Supreme Court's guidance that "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence," *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) (alteration in original removed) (internal quotation marks omitted) (citation omitted), and our own view that "privileges 'run contrary to a court's truth-seeking function[.]'" *United States v. Jasper*, 72 M.J. 276, 280 (C.A.A.F. 2013) (quoting *United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007)).

*Mellette*, 82 M.J. at 377. Consequently, we must "narrowly construe" Mil. R. Evid. 513. *Id.* at 379 (citation omitted). The President, in his role as the promulgator of the Military Rules of Evidence, has "the authority and the responsibility to balance a defendant's right to access information that may be relevant to his defense with a witness's right to privacy." *Id.* at 380. Further, there is no constitutional exception for the attorney-client, spousal, or clergy-penitent privileges in the Military Rules of Evidence and there is every indication the psychotherapist-patient privilege was meant to be equal to those privileges and "'rooted in the imperative need for confidence and trust.'" *Tinsley*, 81 M.J. at 847 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996)). Contrary to appellant's arguments otherwise, and in the absence of an applicable exception under Mil. R. Evid. 513(d), appellant had no right to access the victim's confidential communications.

Privileged records obtained inadvertently maintain their privilege. Here, the victim has not voluntarily disclosed nor consented to the disclosure of the privileged matters to the CADC on appeal and this particular disclosure does not waive the privilege. As noted in *Tinsley*, when addressing the marital privilege, courts have regularly held the unauthorized disclosure of privileged information does not waive

---

[8] The government is required to disclose evidence within its possession or control that is material and favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

the privilege. *Id.* at 852. Similarly, this court found the inadvertent disclosure of potentially exculpatory privileged information to the government "does not constitute a waiver or otherwise trigger an immediate *Brady* duty to disclose." *Id.* That result applies equally to the defense. "Regardless of how [a party] obtains the records, that is either intentionally or inadvertently, it is no less bound to honor evidentiary privileges than the defense." *Id.* at 851 (citing *LK v. Acosta*, 76 M.J. 611, 616 (Army Ct. Crim. App. 2017) ("The privilege governing mental health records, by contrast, applies to both the prosecution and the defense."), rev'd in part on other grounds, 81 M.J. 836).[9] We find the victim's unredacted records in AE LXII remain privileged materials.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Chief Judge FLOR, Senior Judge POND, Senior Judge FLEMING, Judge WILLIAMS, Judge COOPER, Judge STEELE, Judge MURDOUGH, and Judge SCHLACK concur.

Judge MURDOUGH, joined by Judge WILLIAMS, Judge STEELE, and Judge SCHLACK, concurring:

We have previously held that neither a constitutional exception grounded in the Confrontation Clause nor a "*Brady* exception" to Military Rule of Evidence [Mil. R. Evid.] 513 exists. *United States v. Tinsley*, 81 M.J. 836, 850 (Army Ct. Crim. App. 2021) (citation omitted), pet. denied, 82 M.J. 372 (C.A.A.F. 2022). The court reaffirms that holding here, and I agree.

I would go further and say explicitly what the majority leaves mostly implicit. A military judge is not required – and thus not legally permitted – to disclose privileged psychotherapist-patient communications contained in a person's mental health records unless an enumerated exception to Rule 513 applies. Stated differently, there is no implicit constitutional exception to the rule—at all. This is true even if the military judge encounters exculpatory materials during an in camera review.

"The question of whether a communication is privileged is a mixed question of fact and law." *United States v. Harpole*, 77 M.J. 231, 234 (C.A.A.F. 2018). We review "legal questions, including the interpretation of a rule's language . . . de novo." *Id.* at 234-35 (citations omitted).

---

[9] In our prior opinion, we ordered the CADC to "return or confirm the deletion of the victim's improperly disclosed privileged mental health records." 2025 CCA LEXIS 468, at *17. He has complied.

At the outset, I accept the factual premise of appellant's argument, that the military judge reviewed the entire body of records[10] and was aware of the information appellant now asserts was "constitutionally required." But, as does the majority, I reject appellant's argument that the military judge "discovered constitutionally required materials" contained in these records. I would hold that, even if the military judge recognized possibly favorable information within privileged communications, the information was not "constitutionally required" and therefore not discoverable.

### A. The Ghost of the "Constitutionally Required" Exception

In the military, Mil. R. Evid. 513 establishes the "psychotherapist-patient" privilege, which protects the disclosure of "confidential communication[s] made between the patient and a psychotherapist . . . if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition." Mil. R. Evid. 513(a); *see also* Mil. R. Evid. 513(b)(1-2) (defining "patient" and "psychotherapist"). The rule currently contains seven enumerated exceptions to the privilege. *See* Mil. R. Evid. 513(d). In addition to the enumerated exceptions, the privilege holder, i.e., the patient, may voluntarily waive the privilege. Mil. R. Evid. 510.

When the President first established the rule in 1999, the rule contained an eighth exception—there was no privilege "when admission or disclosure of a communication is constitutionally required."[11] For the entire history of this "constitutionally required" exception, military justice, at least in the Army, effectively "treated privileged mental health records as having no privilege at all." *LK v. Acosta*, 76 M.J. 611, 614 (Army Ct. Crim. App. 2017), rev'd in part on other grounds, *Tinsley*, 81 M.J. 836. In retrospect, we observed that production and review of privileged mental health records had become "routine . . . without specifying what constitutional issue was at play." *Id.* at 615 n.3 (internal quotation marks omitted) (citation omitted).[12]

---

[10] As appellant points out, the military judge described these records as "the unredacted, privileged records *I reviewed*." (emphasis added).

[11] Executive Order 13,140, 64 Fed. Reg. 55,115, 55,117 (October 12, 1999).

[12] Our sister court has suggested this as the exact reason Congress eliminated the eighth exception. *J.M. v. Payton-O'Brien*, 76 M.J. 782, 787 (N.M. Ct. Crim. App. 2017) ("After observing military judges routinely breach the privilege in sexual assault cases, Congress and the President attempted to substantially strengthen the privilege by removing the constitutional exception from the rule . . . .")

Congress ordered the removal of this language in the 2015 National Defense Authorization Act (NDAA).[13] Shortly after the legislative amendment to the rule, both we and our sister court opined on its significance. As we noted in *LK v. Acosta*, "Under our constitutional hierarchy, a federal statute cannot bar the 'admission or disclosure' of a communication that is 'constitutionally required.'" *Id.* at 615. We agreed then with the core premise of our sister court's opinion in *Payton-O'Brien* that "constitutional rights prevail over statutory and evidentiary rules." 76 M.J. at 788.

In the wake of *Acosta* and *Payton-O'Brien*, litigants and jurists have endeavored, with varying degrees of precision, to answer the question we first posed in *Acosta*: what, exactly, does the Constitution require when it comes to the disclosure and production of confidential and privileged communications?[14] I would answer it definitively, even more so than we did in *Tinsley*—no "constitutionally required" exception exists, under *any* constitutional doctrine.

### B. *United States v. Mellette and the commingling of privileged and non-privileged information*

In the years following the 2015 NDAA, most Mil. R. Evid. 513 litigation seeking to assert the ephemeral "constitutionally required" exception (up to and including *Tinsley*) sought production of mental health records generally, including privileged communications notwithstanding the language of the rule, from the possession of the applicable records holders. *E.g.*, *Acosta*, 76 M.J. at 613 (defense

---

[13] Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, 128 Stat. 3292, 3369 (2014).

[14] Our sister court holds the Constitution requires abatement of the proceedings if privileged material is necessary to afford the accused a "meaningful opportunity to present a complete defense." *Payton-O'Brien*, 76 M.J. at 783 (internal quotation marks omitted) (citation omitted). Some suggest that "constitutionally required" stems from the Confrontation Clause. *See id.* at 788-89; *see also United States v. Demayo*, ARMY 20220594, 2025 CCA LEXIS 444, at *10-11 (Army Ct. Crim. App. 12 Sept. 2025) (mem. op.) (denying appellant's argument that evidence at issue was necessary "to effectively confront witnesses and present a complete defense[,]" even under *Payton-O'Brien* (internal quotation marks omitted)). Others have relied on *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *See, e.g., B.M. v. United States*, 83 M.J. 704, 717 (N.M. Ct. Crim. App. 2023) ("the records contained evidence of both confabulation and inconsistent statements . . . which would be constitutionally required to be produced because the records were exculpatory under *Brady* and its progeny."), aff'd, 84 M.J. 314 (C.A.A.F. 2024). Still others have invoked the Due Process clause more generally. *See, e.g., United States v. Beauge*, 82 M.J. 157, 167 (C.A.A.F. 2022).

sought "the mental health records of . . . the alleged victim"); *Payton-O'Brien*, 76 M.J. at 783 (defense sought "production of all mental health records" of the victim); *Tinsley*, 81 M.J. at 846 (defense sought victim's "mental health information and treatment history"). In *Tinsley*, unlike in this case, neither the parties nor the military judge ever saw *any* portion of the records. *Id.* at 845-46.

With more recent authority clarifying the narrow scope of the privilege, primarily *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), the focus has shifted. As occurred in this case, litigants often seek only non-privileged material, but the custodian of records nonetheless turns over privileged communications as part of the production. *E.g.*, *R.C. v. Hynes*, 85 M.J. 678, 680-81 (Army Ct. Crim. App. 2025). Then, the military judge chooses to review the materials himself in an attempt to separate the privileged from non-privileged materials. *Id.* at 681. In this scenario, the privileged communications become part of the record.[15] In the view of some, this has altered the calculus of when disclosure of the records becomes "constitutionally required," because now the judge knows their content. I disagree; *Mellette* did not change either the reach of the Constitution or, more specifically, its limits.

In *Mellette*, the CAAF distinguished between "confidential communications" and other, discoverable materials contained within a patient's mental health records. 82 M.J. at 375. In doing so, the CAAF acknowledged the axiom that evidentiary privileges must be "narrowly construed." *Id.* at 377 (quoting *United States v. Jasper*, 72 M.J. 276, 280 (C.A.A.F. 2013)). Strictly applying the plain text of Mil. R. Evid. 513(a), the court held the privilege covers *only* confidential communications, not the broader category of "routine medical records." *Id.* at 378. Thus, "diagnoses and treatments contained within medical records are not themselves uniformly privileged under [Mil. R. Evid.] 513." *Id.* at 375.

Military judges applying this doctrine to the discovery and production of mental health records have encountered a particularly acute challenge. Owing to the nature of the information at issue and the means by which it is collected and stored, it is virtually certain that discoverable "*Mellette* information" (e.g., diagnoses, treatments, et al.) is commingled with privileged material (i.e. confidential communications) in the same record or system of records.[16] Both our court and our

---

[15] "If the military judge reviews any materials in camera, the entirety of any materials examined by the military judge shall be attached to the record of trial as an appellate exhibit. The military judge shall seal any materials examined in camera and not disclosed . . . ." Rule for Courts-Martial [R.C.M.] 701(g)(2).

[16] The President's recent addition to Mil. R. Evid. 513(a) of the phrase, "including records of such communications," did not expand the rule to now include a broader category of records or abrogate the holding in *Mellette*. *Hynes*, 85 M.J. at 683-84.

sister courts have seen various examples of trial judges' best efforts to provide the parties with *Mellette* information, and only *Mellette* information, without the inadvertent production of privileged confidential communications. These efforts have met mixed levels of success despite the extremely explicit wording of these rulings and orders.[17]

I do not comment on the propriety or preferability of these approaches; trial judges have discretion to regulate the practice of discovery. R.C.M. 701(g)(1). However, I disagree with any implication that an in camera review should be disfavored in the wake of *Mellette*. The military judge is ultimately responsible for ruling on interlocutory questions and questions of law, which includes the existence of a privilege. Mil. R. Evid. 104(a); R.C.M. 801(a)(4). And an in camera review is a tool the military judge may use to make that decision. *See* R.C.M. 701(g)(2). *See also United States v. Zolin*, 491 U.S. 554, 568 (1989) (in camera review is an appropriate means to determine the existence of a privilege or exceptions thereto, without terminating the privilege); *United States v. Romano*, 46 M.J. 269, 275 (C.A.A.F. 1997); *United States v. Rivers*, 49 M.J. 434, 437 (C.A.A.F. 1998) (applying Mil. R. Evid. 506 and noting: "Where a conflict arises between the defense search for information and the Government's need to protect [privileged] information, the appropriate procedure is '*in camera* review' by a judge." (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 61 (1987); further citation omitted)); *B.M.*, 84 M.J. at 325 (Sparks, J., concurring) ("[I]t may not yet be known whether the records requested are partially privileged or not privileged at all as described in *Mellette*. The military judge may wish to consult the regulation of discovery guidance provided in R.C.M. 701(g)(2)."); *United States v. Bowser*, 73 M.J. 889, 897 (A.F. Ct. Crim. App. 2014) ("Where discovery obligations potentially impact a recognized privilege, an *in camera* review is generally the preferred method for resolving the

---

[17] *See, e.g., Hynes*, 85 M.J. at 681 (entire body of mental health records released notwithstanding judge's order to provide only a list of pertinent items while "copies of actual mental health records **SHALL NOT** be produced" (emphasis in original)); *B.M.*, 83 M.J. at 707 (privileged materials released notwithstanding an order that: "The custodian of records shall produce only records containing no actual communications . . . ." (emphasis in original)); *In re HVZ*, Misc. Dkt. No 2023-03, 2023 CCA LEXIS 292, at *6 (A.F. Ct. Crim. App. 14 July 2023) (trial judge ordered medical unit to "work with a medical law attorney" to redact privileged materials prior to providing them to counsel), rev'd on other grounds, 85 M.J. 8 (C.A.A.F. 2024); *In re RW*, Misc. Dkt. No. 2023-08, 2024 CCA LEXIS 71, at *9-11, 22-24 (A.F. Ct. Crim. App. 9 Feb. 2024) (military judge, after two unsuccessful attempts to have "in-house" medical attorneys review records, erred by designating a third attorney in another organization to perform what amounted to a "taint team" in camera review); *see also B.M. v. United States*, 84 M.J. 314, 323 (C.A.A.F. 2024) (Ohlson, C.J., concurring) (suggesting stipulations of fact and affidavits from the psychotherapist as alternatives to disclosure of the records themselves).

competing compulsions." (citation omitted)), aff'd, 74 M.J. 326 (C.A.A.F. 2015); *United States v. Trigueros*, 69 M.J. 604, 611 (Army Ct. Crim. App. 2010) ("'The preferred practice is for the military judge to inspect the medical records *in camera* . . . .'" (quoting *United States v. Briggs*, 48 M.J. 143, 145 (C.A.A.F. 1998)), pet. denied, 69 M.J. 269 (C.A.A.F. 2010). Review in camera under R.C.M. 701(g)(2), as the military judge did in this case, is an acceptable and permissible way to disaggregate discoverable from non-discoverable information, including separating "*Mellette* information" from confidential psychotherapist communications.[18]

Neither we nor the CAAF have directly answered the question of what a military judge is to do when, as appellant alleges here, he discovers privileged yet plausibly exculpatory information during an in camera review of mental health records undertaken solely for the purpose of *excluding* privileged records from disclosure. *But see B.M.*, 84 M.J. at 322-23 (Ohlson, C.J., concurring) (suggesting that military judges who "uncover[] impeachment material within the records necessary for the accused to receive a fair trial . . . must inform the victim of this discovery and then ask whether the victim wishes to waive the privilege").

---

[18] This is not the same in camera review contemplated by Mil. R. Evid. 513(e)(3). As we noted in *DB v. Lippert*, "[t]here is a vast difference, both in substance and procedural requirements, between a motion to compel discovery filed under [R.C.M. 905(b)(4)] and a motion *seeking access to privileged communications* filed under Mil. R. Evid. 513." ARMY MISC 20150769, 2016 CCA LEXIS 63, at *15 n.9 (Army Ct. Crim. App. 1 Feb. 2016) (mem. op.) (emphasis added). A motion seeking even non-privileged "*Mellette* materials" within a victim's records must still comply with the requirements of Mil. R. Evid. 513(e)(1)-(2), including written motion, notice, and a closed hearing, because the plain text of that rule refers to "records *or* communications." *See H.V.Z. v. United States*, 85 M.J. 8, 16-17 (C.A.A.F. 2024). But, again applying the plain text of the rule, the four preconditions for in camera review under Mil. R. Evid. 513(e)(3) only apply when the judge is asked to rule "on the production or admissibility of *protected* records or communications." (emphasis added); *see also Beauge*, 82 M.J. at 168 ("a military judge may not conduct in camera review of privileged material where a party moving to compel *production of protected records or communications* has not [satisfied Mil. R. Evid. 513(e)(3)(a) or (b).]" (emphasis added)). When the motion seeks and the ruling produces only non-privileged information (e.g. "*Mellette* materials"), the correct standard for in camera review is R.C.M. 701(g)(2) rather than Mil. R. Evid. 513(e)(3). *In re RR v. Anderson*, Misc. Dkt. No. 2024-08, 2024 CCA LEXIS 293, at *14 (A.F. Ct. Crim. App. 22 July 2024) ("Mil. R. Evid. 513 has certain procedural requirements that must be met for an in camera review, but an in camera review is also authorized under other rules as well." (citation omitted)). The military judge in his sealed ruling carefully noted that "at no time has the Court ordered the production of privileged material;" his in camera review was not a Rule 513(e)(3) review.

Appellant, citing predominantly to our sister court's opinion in *Payton-O'Brien*, asserts that the military judge, upon discovering "constitutionally required" information in the records, had a sua sponte duty to seek the victim's consent to disclose the information to the appellant or else abate the proceedings.

This argument fails, because nothing in the Constitution requires the judge to disclose privileged information even if it is putatively favorable. And because the Constitution does not require it, as the military judge correctly recognized, the Rule 513 privilege *prohibits* him from doing so.

## C. The Constitution and Mil. R. Evid. 513

The appellant here argues that the military judge's non-disclosure of privileged communications amounted to a violation of his "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The notion of a "constitutional right to present a defense" is rooted in some combination of the Due Process, Compulsory Process, and Confrontation clauses. *United States v. Bess*, 75 M.J. 70, 74 (C.A.A.F. 2016) (citing *Crane*, 476 U.S. at 690). As the case before us deals with production of evidence, rather than witnesses, the Compulsory Process clause is not directly applicable. However, the production and discovery of evidence implicates the constitutional Due Process doctrine established in *Brady v. Maryland*, 373 U.S. 83. Appellant here generally asserts that the material he avers is "constitutionally required" would have adversely affected the victim's credibility. Evidence affecting a prosecution witness's credibility is within the scope of potential "*Brady* material." *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule." (citation omitted)). I therefore address both appellant's explicit and implicit arguments.

### 1. Brady does not apply to a judge's in camera review

In *Tinsley*, we expressly affirmed "no '*Brady*' exception to Military Rule of Evidence 513" exists. 81 M.J. at 850. *Brady* material is evidence that is: (1) favorable, (2) material, and (3) in the actual or constructive possession of the prosecution. *United States v. Stellato*, 74 M.J. 473, 486-87 (C.A.A.F. 2015); *United States v. Ellis*, 77 M.J. 671, 675 (Army Ct. Crim. App. 2018), pet. denied, 78 M.J. 23 (C.A.A.F. 2018). Any argument that *Brady* requires the military judge to disclose plausibly favorable information discovered during an in camera review ignores the third element of this analysis. A military judge is not part of, or closely aligned with, the prosecution, and a judge reading documents during an in camera review does not – cannot – convert the contents into *Brady* material. *See also United States v. Shorts*, 76 M.J. 523, 532 (Army Ct. Crim. App. 2017) ("[F]or *Brady* purposes, information under the control of the 'prosecution' is not the same as information

16

under the control of the entire government."), pet. denied, 76 M.J. 334 (C.A.A.F. 2017).

When it comes to discovery and production of evidence, though Article 46, UCMJ, and the Rules for Courts-Martial may provide greater rights, *Brady* sets the "constitutional floor." *Id.* at 532 n.6; *see also Acosta*, 76 M.J. at 616 ("There is no general constitutional right to discovery in a criminal case. Rather, constitutional 'discovery' is usually delineated by the contours of the seminal case of *Brady*." (cleaned up)). Discovery and production are not "constitutionally required" except for *Brady* material, and material reviewed by a judge in camera, without the prosecution ever learning of its contents, is not *Brady* material.[19]

*2. The remainder of the Due Process and Confrontation rights do not compel disclosure of information learned during* in camera *review*

Apart from *Brady,* the due process component of a "complete defense" analysis examines whether the rule "infringe[s] upon a weighty interest of the accused" or is "arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (cleaned up) (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). When it comes to Rule 513, "as the Supreme Court [has] recognized . . . the psychotherapist-patient privilege 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Beauge*, 82 M.J. at 167-68 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996)).[20] Moreover, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17. The Due Process clause does not expect, let alone require, trial judges to make the sort of qualitative assessment that the appellant argues here, even if the trial judge encounters plausibly favorable information within privileged communications during an in-camera review. Such an interpretation would turn a rule of privilege into a rule of relevance. In other words, the balance between the

---

[19] In *Tinsley*, we held where the government inadvertently obtains "potentially exculpatory privileged information, such action does not constitute a waiver or otherwise trigger an immediate *Brady* duty to disclose." 81 M.J. at 852.

[20] Here, I respectfully part ways with our sister court's opinion in *B.M. v. United States*, which cites *Beauge*'s adoption of the language in *Holmes* but omits the citation to *Jaffee*. 83 M.J. at 715; *see also B.M.*, 84 M.J. at 324 (Ohlson, C. J., concurring) (distinguishing *Jaffee* as a civil case). Though a civil case, *Jaffee* was the forerunner to, and impetus for, the privilege established in Mil. R. Evid. 513. *See Tinsley*, 81 M.J. at 848 (citing *United States v. Rodriguez*, 54 M.J. 156, 160 (C.A.A.F. 2000)); *United States v. Clark*, 62 M.J. 195, 199 (C.A.A.F. 2005)).

constitutional interests of a "complete defense" for an accused and the confidentiality of a patient was already struck as far back as *Jaffee.*

Finally, turning to the Confrontation Clause, our precedent is unmistakable: "any 'constitutional exception' to Mil. R. Evid. 513 grounded in the Confrontation Clause does not exist." *Tinsley*, 81 M.J. at 850 (citation omitted). As we noted in *Acosta* and reiterate here, the "'right to confrontation is a trial right.'" 76 M.J. at 615 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (plurality op.))[21]; *see also Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."). "The right to confront witnesses does not include the right to *discover* information to use in confrontation." *Acosta*, 76 M.J. at 615 (emphasis in original) (citation omitted).[22] "The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Ritchie*, 480 U.S. at 53 (plurality op.); *see also Delaware v. Fensterer*, 474 U.S. 15, 20 (per curiam) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original) (citation omitted)). The Confrontation Clause does not create "a constitutionally compelled rule of pretrial discovery." *Ritchie*, 480 U.S. at 52.

Having addressed each constitutional doctrine presented in support of the notion that an in camera review can convert privileged communications into a "constitutionally required" evidentiary disclosure, I end where I began—agreeing with the majority. Applying our precedent in *Tinsley* alongside the other authorities discussed above, the military judge did not err when he held the Constitution did not require, and thus the rule prohibited, the disclosure of privileged communications he encountered during his in camera review.

---

[21] The controlling, five-justice majority opinion in *Ritchie* addressed only the Compulsory Process Clause. *See generally Ritchie*, 480 U.S. at 55-60. A four-justice plurality issued this section of the opinion, which we previously cited in *Acosta*, addressing the Confrontation Clause. *Id.* at 51-54. The CAAF endorsed this language from *Ritchie* as a "limitation" on "the debate on the confrontation issue." *Beauge*, 82 M.J. at 167.

[22] In *Tinsley*, we also noted that the *Ritchie* plurality did not impose or suggest a "blanket rule that a defendant's 'fundamental due process' rights [always] require an *in camera* review in all cases and for all privileges." 81 M.J. at 850 n.5. I reiterate that here; as noted above, an in camera review is merely one of the tools the military judge has at his disposal – I do not suggest it will or must be used in every case.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court